IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BEN MOSBAH SAIDI, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CCB-19-1866 |
| POLICE OFFICER BRETT RANDALL, | * | |
| OFFICER JASON HIGGINS, | | |
| OFFICER STANLEY STRUMSKY, | * | |
| OFFICER NICHOLAS CRUMP, | | |
| OFFICER MATTHEW LUNDQUIST, | * | |
| WOODLAWN POLICE DEPARTMENT, and | | |
| IBRAHIM ALSHEYAB, | * | |
| Defendants.[1] | *** | |

## MEMORANDUM OPINION

Self-represented plaintiff Ben Mosbah Saidi, brought this civil action pursuant to 42 U.S.C. § 1983 against Police Officers Brett Randall, Jason Higgins, Stanley Strumsky, Nicholas Crump, and Matthew Lundquist, the Woodlawn Police Department, and Ibrahim Alsheyab, alleging that he was racially profiled and subjected to excessive force during his arrest. ECF Nos. 1, 6. Saidi seeks monetary damages. *Id.*

On May 15, 2020, Defendants Randall, Higgins, Strumsky, Crump, Lundquist, and Woodlawn Police Department (collectively the "County Defendants") filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment. ECF No. 26. Saidi was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion could result in dismissal of the complaint. ECF No. 27. Thereafter, Saidi was granted two extensions of time in which to file a response to the County Defendants' Motion. ECF Nos. 29, 31. To date, Saidi has not filed anything to oppose the Motion.

---

[1] The Clerk shall amend the docket to reflect the full and correct names of the Defendants as stated in the caption.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, the court will grant the County Defendants' Motion.

## Background

Saidi claims that he had an altercation with his boss and landlord, Defendant Ibrahim Alsheyab, after Saidi was directed to move out of Alsheyab's home. ECF No. 1 at 3; ECF No. 6 at 3. Saidi, intoxicated, refused to leave, and demanded payment for his work remodeling the home; Alsheyab called the police. ECF No. 1 at 3; ECF No. 6 at 3.

County Defendants state Officers Randall, Higgins, Crump, and Strumsky responded to 7017 Dogwood Road, Windsor Mill, Maryland, pursuant to a report of an intoxicated person causing a disturbance. ECF No. 26-2 at 4. Officer Randall spoke to Saidi in the driveway and observed that he had bloodshot eyes, smelled of alcohol, slurred his speech, and had difficulty standing upright. *Id.* Alsheyab informed Officer Randall that Saidi did not live at the property, but he was willing to take Saidi to a hotel for the night. *Id.* at 5; ECF No. 1 at 3; ECF No. 6 at 5. According to County Defendants, Saidi became aggressive and attempted to reenter the residence to get his toolbox, and yelled at Officer Randall, "I'm a Navy Seal," "I'm a police officer just like you," and later, several times, "I'm a Marine you stupid mother fucker." ECF No. 26-2 at 5. Thereafter, Saidi was escorted to Alsheyab's car and he and Alsheyab left the location. *Id.*

County Defendants assert that less than thirty minutes later, Officers Randall and Higgins responded to a call regarding an intoxicated individual at the Quality Inn in Windsor Mill, Maryland. *Id.* Upon arrival, the officers encountered Saidi and Alsheyab outside the hotel, where Saidi was refusing to stay. *Id.* Higgins advised Saidi to stay overnight in the hotel and ultimately Saidi agreed not to leave the hotel and the officers left the scene. *Id.*

Saidi avers that Alsheyab took him to a hotel, but he returned to Alsheyab's residence as he did not have his wallet, at which time Alsheyab's wife called the police again. ECF No. 1 at 4;

2

ECF No. 6 at 5. County Defendants state that Officers Randall, Higgins, Crump, Roussey, and Cates responded to Alsheyab's residence for a reported burglary. ECF No. 26-2 at 5. Alsheyab reported to Officer Randall that Saidi had returned and attempted to enter his residence. *Id.* Saidi contends that he reported to Officer Randall that Alsheyab assaulted him, by kicking him until his ribs broke. *Id.*; ECF No. 1 at 4; ECF No. 6 at 6. Officer Randall did not observe any injuries to Saidi nor any forced entry to Alsheyab's residence. ECF No. 26-2 at 5. Officer Randall instructed Saidi to leave the property and escorted him from the property. *Id.* at 6.

Officer Randall reports that Saidi stopped walking to yell "fuck you, you stupid mother fucker" and "hit me, you bitch," and then raised his fists and shoved Officer Randall several times with his chest, yelling "you bitch, I'm getting out of here." *Id.* He states Saidi continued to advance several times with his hands raised, ignoring orders to cease. *Id.* Saidi avers that Officer Randall, his partner, and three other police officers approached him from all directions, slammed him into the ground, and kicked and punched him in the face until he lost consciousness. ECF No. 1 at 4; ECF No. 6 at 6. He asserts that Officer Randall was the first to approach him and tackled him. ECF No. 6 at 6. Officer Randall states that he performed a leg sweep to take Saidi to the ground and eventually handcuffed him and attests that Saidi was not injured during the arrest. ECF No. 26-2 at 6; ECF No. 26-9 at ¶¶ 33–35. Saidi was placed uninjured in Officer Cates' police car. ECF 32-1 at ¶ 10.

Officer Cates states that while in route to the Woodlawn Precinct, Saidi began striking his face and head against the cage separating the seats. *Id.* at ¶ 11. Officer Cates pulled over and contacted dispatch and the other officers, who responded to Officer Cates' location to assist. *Id.* at ¶ 12–13. Saidi was removed from the vehicle to the side of the road, where Officer Cates observed injuries to his face. *Id.* at ¶ 15. A medic was requested to respond to their location. *Id.* at ¶ 16. Medical personnel observed Saidi to be agitated and smelling of alcohol and appeared to have a

deformity on his nose. ECF No. 26-3 at 1. Saidi was placed on a stretcher where he became combative. *Id.* Officer Crump rode in the ambulance with the medics for their safety. *Id.* Saidi reportedly wiggled off a mask and spit on the medical crew and Officer Crump and made several violent threats and vulgar statements. *Id.* Additionally, the medic crew reported that Saidi kicked Officer Crump in the chest when he was being transferred from the stretcher to a hospital bed. *Id.*

In contrast, Saidi, who asserts that he is an asthmatic, states that while at Alsheyab's residence, he screamed for help, but Officer Randall continued to slam him into the ground to the extent that he could not breathe. ECF No. 6 at 6. While on the ground, another officer was on top of Saidi twisting his leg while another officer kicked him. *Id.* Saidi contends that an ambulance arrived later, a paramedic sedated him, and Officer Randall rode with him to the hospital. *Id*. Saidi states that he had a CAT scan and doctors indicated that he had a concussion, but no internal bleeding. *Id.* at 6–7. Saidi claims that the officers also broke his nose in two places and injured his left knee. ECF No. 1 at 4. Saidi asserts that Officer Randall tampered with or disposed of the medical paperwork given to him by a doctor. ECF No. 6 at 7.

Saidi was charged with second degree assault, disorderly conduct, trespassing, and resisting arrest. ECF No. 26-4 at 2–3. He was ultimately convicted of resisting arrest; a conviction Saidi has appealed. *Id.* at 9.

**Standard of Review**

The County Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as

4

one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Id.* at 261.

Because the County Defendants filed a motion titled as a motion to dismiss or for summary judgment, Saidi was on notice that the court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the court will review Saidi's claims against the County Defendants under the Rule 56(a) standard.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from

proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

County Defendants have attached to their Motion evidence including the Baltimore County Police Department incident report, ECF No. 26-2, and affidavits from Officer Cates, ECF No. 32-1, Officer Crump, ECF No. 33-1, Officer Higgins, ECF No. 33-2, Officer Lundquist, ECF No. 26-8, Officer Randall, ECF No. 26-9, and Officer Strumsky, ECF No. 26-10. In contrast, Saidi did not submit an opposition to County Defendants' Motion, relying solely on his unverified Complaint and supplement. ECF Nos. 1, 6. Because Saidi's Complaint is not verified, its factual assertions may not be considered as evidence in opposition to County Defendants' Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).[2]

## Analysis

### I.  Woodlawn Police Department

Defendant Woodlawn Police Department is not a "person" subject to suit under 42 U.S.C. § 1983[3] and, therefore, Saidi's claims against it must be dismissed. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a

---

[2] Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.
[3] That section states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. §1983 (emphasis added).

6

"person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (3d ed. 2020).

The entity Saidi identifies as "Woodlawn Police Department" does not exist, rather there is a Woodlawn Precinct #2, part of the Baltimore County Police Department. ECF No. 26-1 at 15; *see also* ECF No. 26-2 at 1. Woodlawn Precinct #2 is a facility of the Baltimore County Police Department. A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cnty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D. N.C. 1989). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person, and Woodlawn Precinct #2 is not a person within the meaning of the statute.

## II.     Equal Protection

Saidi cannot succeed on his claim that the County Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a claim under the Equal Protection Clause, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Differential treatment may be alleged by identifying specific individuals in a defendant's position and alleging that these other individuals were treated differently. *See, e.g.*, *King v.*

7

*Rubenstein*, 825 F.3d 206, 221 (4th Cir. 2016). Discriminatory intent may be shown by circumstantial evidence, such as statements revealing a defendant's attitude toward someone of a particular race, *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1133 (4th Cir. 1988), or evidence of prior discriminatory practices, *Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987).

It is unclear from Saidi's allegations, but his pleadings indicate that he may be Tunisian. *See* ECF No. 6 at 5. Saidi alleges no facts regarding how County Defendants have handled suspects or arrestees who were not of his same race. Saidi provides only the conclusory statements in his unverified complaint that he was "racially profiled" by County Defendants and that officers called him a terrorist during their interactions. ECF No. 1 at 4; ECF No. 6 at 6. The record, however, does not permit any inference of discriminatory intent by the police officers. The officers' affidavits show that their treatment of Saidi was in response to Mr. Alsheyab's calls to safely remove Saidi, who was belligerent and intoxicated and continued to return, uninvited, to Mr. Alsheyab's home. *See, e.g.*, ECF No. 29-6, 33-1. Saidi has submitted no evidence to rebut this. Saidi's vague assertions and legal conclusions are insufficient to show discriminatory intent. Thus, summary judgment will be granted to the County Defendants on Saidi's Equal Protection claim.

### III.    Excessive Force

The remaining County Defendants, Officers Randall, Higgins, Strumsky, Crump, and Lundquist, argue that summary judgment is warranted in their favor because the evidence demonstrates that the force used against Saidi during his arrest was reasonable. ECF No. 26-1 at 17. Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989); *see also Cty. of Los Angeles v. Mendez*, __ U.S. __, 137 S. Ct. 1539, 1546–47 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham*."). Reasonableness is

assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Mendez*, 137 S. Ct. at 1546 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure." *Id*. (quoting *Garner*, 471 U.S. at 8–9). Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'" *Mendez*, 137 S. Ct. at 1546 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

Here, the facts presented by the County Defendants are undisputed, as Saidi has not submitted any admissible evidence. The only force employed against Saidi during his arrest was by Officer Randall, who performed a leg sweep in order to arrest Saidi. ECF No. 26-9 at ¶ 33. In light of the circumstances, these actions were reasonable. Saidi had been instructed to leave Alsheyab's residence, for the second time that night, or risk being arrested. Saidi, who acknowledges that he was intoxicated, was belligerent and aggressively approaching Officer Randall with his fists raised as he was being escorted from the property. *Id.* at ¶ 28–32. Moreover, he bumped Officer Randall with his chest while attempting to verbally provoke Officer Randall, stating "hit me, you bitch, fuck you." *Id.* As Saidi continued to be uncooperative and increasingly hostile, Officer Randall's use of a leg sweep to terminate the situation was reasonable. Furthermore, the record does not indicate that any of Saidi's injuries resulted from the arrest but

rather were self-inflicted, as Saidi struck his own face and head against the seat partition in Officer Cates's car as he was being transported to the Woodlawn precinct. *Id.* ¶ 35; ECF No. 33-1 ¶ 24; ECF No. 32-1 at ¶ 10–15. Thus, summary judgment must be granted to the County Defendants' as to the excessive force claim.

## Conclusion

The County Defendants' Motion, construed as a motion for summary judgment, will be granted. Defendant Woodlawn Police Department will be dismissed. Judgment will be granted in favor of Officers Randall, Higgins, Strumsky, Crump, and Lundquist.

Additionally, the claims against Defendant Ibrahim Alsheyab will be dismissed. Pursuant to this court's order issued on October 22, 2020, a copy of the U.S. Marshal service of process form was mailed to Saidi to be completed and returned to the court so that the U.S. Marshal could effectuate service. ECF No. 31. Saidi was forewarned that his failure to do so would result in dismissal of the complaint as to Alsheyab. *Id.* To date, Saidi has not returned the U.S. Marshal service of process form for Alsheyab. Accordingly, Defendant Alsheyab will be dismissed.

A separate Order follows.

\_\_\_3/1/2021_____ \_\_\_\_/S/_____
Date                                                Catherine C. Blake
                                                    United States District Judge